## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

KATE TERNUS,

                Plaintiff,

v.

MICHAEL HILGERS, in his official capacity as the Attorney General of the State of Nebraska; and

ASHLEY NEWMYER, in her official capacity as the Director of the Division of Public Health for the Nebraska Department of Health and Human Services,

                Defendants.

Case No. 4:26-cv-3190

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.　　Few decisions are more personal or consequential than how a woman gives birth. Nebraska deprives expecting mothers of the ability to act on that decision by prohibiting expecting mothers from hiring a certified nurse midwife to attend a home birth, even though home birth itself remains entirely legal.

2.　　Plaintiff Kate Ternus is a wife and mother with a growing family. For future low-risk births, she intends to give birth at home with the assistance

1

of a certified nurse midwife (CNM). She seeks that care for personal, medical, and familial reasons, and she has had positive experiences with midwife-assisted childbirth in the past. Nebraska law prevents her from making that choice.

3.      Under Nebraska's Certified Nurse Midwifery Practice Act, a woman may legally give birth at home, but she may not receive assistance from a certified nurse midwife. Instead, a woman who desires a home birth must either proceed alone—without professional assistance—or forgo home birth altogether.

4.      Nebraska's restrictions arbitrarily and unnecessarily burden the right to choose the manner and circumstances of childbirth. They interfere with deeply personal family decisions, deny access to safe and lawful medical care, and expose expecting mothers to greater risk.

5.      Ms. Ternus brings this action to vindicate her rights under the Due Process Clause of the Fourteenth Amendment. She seeks declaratory and injunctive relief to prevent enforcement of Nebraska's ban on certified nurse midwives attending home births.

## JURISDICTION AND VENUE

6.      This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3)

(redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

7.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant resides in this District, and 28 U.S.C. § 1391(b)(2), because a substantial part of the acts giving rise to Plaintiff's claims occurred and continues to occur in this District.

## PARTIES

### Plaintiff

8.     Plaintiff Kate Ternus is a wife, mother, and homemaker. She is a citizen of the United States and resident of Lindsay, Nebraska.

### Defendants

9.     Defendant Michael Hilgers is the Attorney General of Nebraska. His official duties include upholding and defending the laws of Nebraska and enforcing health regulations. He is responsible for enforcing Nebraska's Certified Nurse Midwifery Practice Act. He is sued in his official capacity only.

10.     Defendant Ashley Newmeyer is the Director of the Division of Public Health for the Nebraska Department of Health and Human Services (DHHS). Ms. Newmeyer has the ultimate responsibility for regulating health-related professions and facilities in the state of Nebraska. She is responsible for adopting rules and regulations to carry out the Certified Nurse Midwifery Practice Act. She is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### Home Birth

11.    During the colonial period, and at the time of the enactment of the Bill of Rights in 1791, the vast majority of American births occurred outside of a hospital with the assistance of midwives.

12.    When the Fourteenth Amendment was enacted in 1868, midwifery was universally legal, and women maintained extensive choices among a variety of birth assistants.

13.    From the founding through the early twentieth century, choices regarding the person assisting childbirth and the place and manner of childbirth were, by practice, law, and custom, a matter of individual and family choice.

14.    Home birth can be a safe option for mother and child, and it is legal in all 50 states.

15.    Home births alleviate the financial burden of childbirth on expecting mothers. Service charges for home births are generally lower than charges for hospital births in the same service area. Further, the lower number of unnecessary medical interventions results in a significant reduction in childbirth costs.

16.    Home births also offer mothers an important alternative to hospitals. They provide a comfortable environment, affordable and accessible

services, avoidance of contact with sick people, and compatibility with personal or religious values.

17.   Home birth is rising in popularity nationwide and is at its highest level in decades. Many of those who choose home birth for religious reasons or based on personal values, like the Amish, will proceed with a home birth even if they are unable to secure the services of a qualified CNM, leading to a significantly riskier childbirth experience.

### Harm Caused by Nebraska's Restrictions

18.   The dearth of trained healthcare professionals willing and able to attend home births has pushed Nebraska women to less safe alternatives, including unassisted home birth and home birth assisted by lay midwives or others who operate without regulation in Nebraska.

19.   Unassisted labor or labor with the assistance of a provider with no formal training can be dangerous. Untrained mothers or birth attendants may not know if or when a hospital transfer becomes necessary.

20.   There is a demand for certified nurse midwives among Nebraska women, but their options are limited due to the restriction challenged here.

21.   There is a physician shortage in Nebraska, with many rural women not having ready access to a doctor. Prenatal care is especially scarce—some women drive over an hour to reach their OB-GYN. This has resulted in

women giving birth on the road on the way to the closest hospital with childbirth services.

## Challenged Law

22. Neb. Rev. Stat. § 38-613(3)(b), prohibits CNMs from attending home births even if under the direct supervision of a collaborating physician.

23. This law, unique to Nebraska, excludes CNMs despite Nebraska's recognition that they are licensed healthcare professionals qualified to provide prenatal, delivery, and postpartum care.

24. Failure to adhere to the challenged provisions is a felony and can lead to fines and criminal prosecution.

25. The challenged restrictions thereby leave expecting mothers with only two options for home births: to labor unassisted or to be attended by a physician. Because physicians are typically unavailable for home births, particularly in rural areas, the most common path for a woman wishing to experience home birth is to proceed unassisted.

## Plaintiff

26. Ms. Ternus is a resident of Nebraska. She is originally from South Dakota and later attended Franciscan University, where she studied English and Theology.

27. Ms. Ternus is married and the mother of two children.

6

28.    She and her husband relocated to Nebraska approximately four years ago to be closer to family and to raise their children in a small community.

29.    Ms. Ternus is primarily a homemaker but also performs part-time freelance editing work.

30.    She and her husband intend to have additional children in the near future.

31.    For future low-risk childbirths, Ms. Ternus wishes to give birth at home with the assistance of a certified nurse midwife.

### Prior Birth Experience with Midwife Care

32.    During her first pregnancy, Ms. Ternus initially received prenatal care from a traditional obstetrical practice.

33.    She desired a natural childbirth experience with minimal medical intervention and sought information regarding childbirth options, labor, and delivery. But she became frustrated by the limited time available during appointments and by the unwillingness of her providers to meaningfully discuss her preferences and concerns.

34.    After researching alternatives, Ms. Ternus contacted a certified professional midwife to discuss her options. Although she was not yet a patient, the midwife spent approximately an hour answering questions regarding pregnancy, labor, delivery, and home birth. Ms. Ternus was impressed by the time, attention, and individualized guidance the midwife provided.

35.    Based on those conversations, she transferred her care to the midwife. Ms. Ternus received prenatal, delivery, and postpartum care from her midwife. Throughout her pregnancy, she was able to ask questions, discuss concerns, and participate meaningfully in decisions regarding her care.

36.    Following delivery, her midwife remained available to provide postpartum care and support, including assistance with breastfeeding and newborn care.

37.    Ms. Ternus's first childbirth experience was overwhelmingly positive. It emphasized continuity of care, informed decision-making, individualized attention, and respect for the mother's preferences throughout pregnancy, labor, and recovery.

38.    Based on that experience, she became confident that home birth with professional midwife assistance was the childbirth model best suited to her needs and family plans.

39.    After relocating to Nebraska, Ms. Ternus hoped to pursue the same childbirth model for future pregnancies.

40.    Before becoming pregnant with her second child, she began researching childbirth options in Nebraska and contacting providers who might be willing to assist with a home birth.

41. Ms. Ternus learned that Nebraska prohibits certified nurse midwives from attending home births and that legal restrictions had significantly reduced the availability of home-birth providers within the state.

42. Ms. Ternus learned that midwives in Nebraska have faced criminal law enforcement and professional discipline related to home birth attendance. She contacted CNMs for assistance and learned that many CNMs are willing to attend home births but for Nebraska's statutory restrictions.

43. Ms. Ternus was surprised and distressed to learn that Nebraska law leaves her without access to professionally supported home birth in her home state.

44. When she became pregnant with her second child, Ms. Ternus again sought care from a certified nurse midwife located in South Dakota. To obtain care consistent with her preferences, she traveled across state lines for prenatal appointments throughout her pregnancy.

45. Her certified nurse midwife was located approximately ninety minutes from her home. Because Nebraska law prohibited certified nurse midwives from attending a home birth in Nebraska, Ms. Ternus was unable to give birth in her own home.

46. Instead, she arranged to give birth at a friend's home in South Dakota so that she could lawfully receive care from her chosen provider. Ms. Ternus was required to travel approximately ninety minutes while in labor.

9

She was concerned that labor could progress rapidly and that she might be forced to give birth during the trip. Some areas en route were 20 minutes or more from the closest emergency services.

47.   Ms. Ternus ultimately gave birth to her second child with the assistance of a certified nurse midwife in South Dakota. The birth was successful and she again experienced the benefits of individualized, midwife-led care.

48.   Ms. Ternus nevertheless would have preferred to give birth in her own home surrounded by her family and familiar surroundings. Her second childbirth experience reinforced her belief that home birth with professional midwife assistance is the childbirth model best suited for her family while also demonstrating the substantial burdens imposed by Nebraska's restrictions.

### Plaintiff's Childbirth Preferences and Values

49.   Based on her childbirth experiences, Ms. Ternus believes that home birth with professional midwife assistance is the childbirth model best suited to her medical needs, personal values, and family circumstances.

50.   She values a model of maternity care that recognizes pregnancy and childbirth as natural physiological processes rather than medical conditions requiring routine intervention.

51.   Ms. Ternus seeks continuity of care, individualized decision-making, informed consent, and meaningful participation in decisions concerning pregnancy, labor, and delivery.

52.   She values the extensive time, education, and support provided by midwives throughout pregnancy and postpartum recovery.

53.   Ms. Ternus is not opposed to medicine or medical intervention. Rather, she believes that medical intervention should be available when necessary while avoiding unnecessary procedures or interventions.

54.   She believes that childbirth decisions should be made by mothers and families in consultation with qualified healthcare professionals rather than dictated by blanket government restrictions.

55.   Ms. Ternus does not feel safe or responsible choosing an unassisted home birth. She desires the presence of a trained medical professional capable of monitoring labor, identifying complications, and facilitating transfer to a hospital when necessary.

56.   She understands that certified nurse midwives are specifically trained to manage low-risk pregnancies, identify complications, and coordinate timely hospital transfers when necessary.

57.   The local hospital near Plaintiff's residence does not offer comparable CNM-supported childbirth options but is available for emergency care.

11

58.     As a result of Nebraska's restrictions, Plaintiff must travel at least 1.5 hours to receive care approximating her desired birth plan, despite the availability of nearby emergency medical facilities and CNMs willing to serve her birth plan.

59.     Ms. Ternus remains committed to home birth with certified nurse-midwife assistance for future low-risk pregnancies.

## Effect of Nebraska Law on Plaintiff

60.     Shortly after relocating to Nebraska, Ms. Ternus became involved in efforts to reform Nebraska's home-birth laws.

61.     She and her husband communicated with legislators, followed proposed legislation concerning midwifery and home birth, and participated in advocacy efforts intended to expand childbirth options for Nebraska families.

62.     Ms. Ternus hoped Nebraska law would change before her second pregnancy. It did not. As a result of Nebraska's restrictions, she was unable to obtain certified nurse-midwife-assisted home-birth services in Nebraska.

63.     Instead, Ms. Ternus was required to seek care from an out-of-state provider, travel across state lines for prenatal appointments, and ultimately give birth outside Nebraska.

64.     Nebraska's restrictions deprived her of the opportunity to give birth in her own home despite her desire to do so and despite the availability of qualified providers who otherwise would have been willing to provide care.

65.   Ms. Ternus believes Nebraska's restrictions unnecessarily burden her ability to obtain childbirth care consistent with her values, preferences, and family circumstances.

66.   Ms. Ternus's insurance requires her to use providers in Nebraska to receive reimbursement. Thus, she will be unable to use her insurance for services that would otherwise be covered if she has to leave the state for childbirth care.

67.   If allowed to give birth at home with a CNM attendant, Plaintiff would insist that any birth attendant adhere to health and safety regulations including, but not limited to, CNM licensing and patient risk prequalification.

## Ongoing and Prospective Harm

68.   Ms. Ternus and her husband intend to have additional children in the future.

69.   She remains committed to home birth with certified nurse-midwife assistance and intends to pursue that option for future pregnancies.

70.   Unless Nebraska's prohibition is enjoined, Ms. Ternus will again be forced either to forgo her preferred childbirth model or obtain care outside Nebraska.

71.   Her injury is neither speculative nor hypothetical. Nebraska's prohibition has already altered her childbirth decisions and forced her to obtain care outside the state during a prior pregnancy.

13

72. Because Ms. Ternus intends to have additional children and remains subject to the challenged law, she faces an ongoing and imminent threat of future injury.

## CLAIM FOR RELIEF

### Violation of the Due Process
### Clause of the Fourteenth Amendment

73. Plaintiff incorporates by reference each and every allegation set forth in this Complaint.

74. Ms. Ternus is a person under 42 U.S.C. § 1983.

75. The Due Process of Law Clause of the Fourteenth Amendment protects the liberty of individuals to be free from undue government interference.

76. Under the Due Process Clause, a law cannot deprive any person of her fundamental right to choose the manner and circumstances of giving birth unless the law is narrowly tailored to achieve a compelling government interest.

77. Decisions concerning childbirth directly affect a woman's body, medical autonomy, and physical integrity. They involve intimate, irreversible physical processes and carry profound consequences for both mother and child.

78. The right of women to choose the manner and circumstances of giving birth is deeply rooted in this nation's history and tradition. Throughout American history, childbirth has occurred primarily outside of hospitals and

14

has traditionally been attended by midwives rather than physicians. Government regulation of childbirth has historically focused on health and safety, not on prohibiting women from choosing the setting or attendants for childbirth.

79. By imposing the challenged provisions on CNMs and expecting mothers, Nebraska unnecessarily limits and burdens mothers' privacy in family-planning and their choices for childbirth services.

80. These burdens imposed by Nebraska are not narrowly tailored to a compelling state interest. Indeed, they are not even rationally related to a legitimate government interest.

81. Nebraska's prohibition applies categorically, without regard to an individual woman's health, pregnancy risk level, proximity to emergency care, or the qualifications of the certified nurse midwife.

82. Expecting mothers in many parts of Nebraska, especially rural areas, have no options for medically trained birth attendants.

83. Nebraska's prohibition on certified nurse midwives attending home births does not reflect a judgment about training, competence, or patient safety. Certified nurse midwives are licensed medical professionals whom Nebraska permits to provide prenatal, delivery, and postpartum care in hospitals and other clinical settings.

15

84.   Instead, the prohibition functions to reserve childbirth services for hospital-based providers by excluding CNMs from the home-birth setting altogether. The law does not prohibit unassisted home birth. It excludes only certified nurse midwives—the providers most capable of safely attending low-risk out-of-hospital births.

85.   CNMs are highly trained and regulated by Nebraska law. Federal and state law ensure that home birth patients receive timely emergency services if necessary. There is no compelling or rational reason to impose the challenged restrictions, which effectively deny access to services in many parts of the state, including where Ms. Ternus lives.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.   A declaratory judgment that the home birth prohibition of the Nebraska's Certified Nurse Midwifery Practice Act, Neb. Rev. Stat. § 38-613(3)(b), violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

B.   A permanent injunction enjoining Defendants from enforcing the home birth prohibition of Nebraska's Certified Nurse Midwifery Practice Act;

C.   An award of costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

16

D.   Any such other relief as the Court may deem just and proper.

Respectfully submitted this 23rd day of June, 2026.

s/ Joshua Polk
JOSHUA POLK
Cal. Bar No. 329205
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Tel: (916) 419-7111
JPolk@pacificlegal.org

GLENN E. ROPER
Colo. Bar No. 38723
PACIFIC LEGAL FOUNDATION
1745 Shea Center Dr., Suite 400
Highlands Ranch, CO 80129
Tel: (916) 419-7111
geroper@pacificlegal.org

*Attorneys for Plaintiff*
